With that, we'll move to the next case on the argument calendar, success by media holdings versus the Federal Trade Commission. Silence. Take your time council. Silence. Silence. Silence. May it please the court. My name is David Abney representing the appellants today. We have a historically very interesting case. When the Federal Trade Commission Act was passed in 1914, it was at the height of the progressive era. It was the culmination of efforts by Theodore Roosevelt, William Taft, and finally Woodrow Wilson to try to bring in expertise to help out the people of the United States with very difficult problems. Before the progressive era, things had been on a hit and miss basis. But the progressives, one of their fundamental thoughts was things have gotten so complicated and difficult, we need experts. We need administrative boards that can handle things like trade, commerce, public health to assist to unravel these problems and deal with these difficult problems of a rapidly growing nation. And so the Congress passed the FTC Act. Over the years, it has amended it. But one of the principles of the enforcement part of all this is that you're protecting not only the rights of consumers, but you're also protecting the rights of people who are accused of committing deceptive acts and trade practices and so forth. So there's a very definite system here where the judiciary plays a key role in making sure that things are done properly and that the rights of everybody receive proper protection. Over the last few months, we've seen what happens when the executive branch decides it wants to push the judiciary aside, take over and decide for itself everything that's important and say, well, we get to judge every single thing that goes on. We're in charge here. And it doesn't really matter what the rules are, what the regulations are, what the statutes are. Also, could we move to the specific issues, if you don't mind, before your time runs out? And I'd appreciate your addressing why it was improper to award a civil contempt sanction calculated based on net revenues. It looked to me from what I read in the record that it was calculated based on gross revenue. But even if it's on net revenue, you still have to take into account an offset. And those sorts of sanctions are supposed to be proportional and calibrated to the actual harm that has been suffered. But there was no evidence here that they weren't actually calibrated to that. You sort of say, how much money did you bring in? Okay. Well, they brought in a whole lot. And the people that they duped got 2% or 6% or something of that money back. So basically, they kept essentially all of it. So I guess I don't really understand why it was improper to look at that very large number. Well, the very large number was based on essentially receipts coming in. This is money that's come in. And now – Right. And it was not used for – it was unlawful what they were doing. According to the FTC. According to the district judge also. At the end, though, but you can't award a compensatory – a civil compensatory sanction unless it's calibrated to the actual loss. And this wasn't calibrated to the actual loss. The money coming in is not the same as the actual loss. If there's an offset for people who use the products and are thoroughly satisfied with those products, thousands of people would come into the district court presenting statements that they were satisfied with the products. So you've got a disconnect here between an actual calibration of that civil compensatory sanction and what actually happened. And of course, there's no – and you may ask my colleague about this because I've not found anything in the record that's helpful. Where's the money? Was it actually paid back to anybody? There's nothing there to show that it ever was or ever will be. The money went to the FTC, dropped into a dark hole, and there it seems to remain. Well, haven't – hasn't the FTC represented to us – and yes, we can certainly ask your friend – but haven't they represented to us that the money will only be gone to victims? I'm not so sure that that's – Well, as I read it, their position is that all monetary relief must be distributed to the consumers and that any money left over after distribution to the consumers would be returned to the defendants unless the court were to order otherwise. That's what appears on paper, but maybe the – Well, that's what we're looking at. Well, you've got a gentleman right here who can – if you want to ask the question, where's the money? I think the answer would be highly illuminating. But that was the court order, right, that that's what had to happen? You're challenging the court order. You're challenging what's on paper. Yes. Okay, so that's what we have to look at is what's on paper, and that is what is on paper, correct? Yes. Okay. But there is a disconnect between – a civil compensatory sanction is supposed to be calibrated to the actual loss. No offsets were figured out, so what was the actual loss to these consumers? Many of them who took the products – the coffees, the teas, the supplements, the travel stuff – they took all those products, were satisfied with them. Where's the offset? It's not there. So this cannot be a properly calibrated civil compensatory sanction. It simply cannot be, as a matter of fact. And I only made that suggestion to the court. I'm not trying to be flippant or anything, but I would like to know, and perhaps the court would like to know, where is that money right now? If I may return, the system is set up in such a way that if the FTC perceives a problem by statute, what they're supposed to go in is they see immediate problem, deceptive acts and practices, people are being harmed, get rapid injunctive relief from the court. Stop. You stop everything you're doing that's bad. You don't stop everything. You stop everything you're doing that's bad. Well, they tried that once, right? Well, not in this particular case. No, I understand. In another case – Yes, and that's why they brought the contempt sanction, right? Well, in that other case. But we're talking about this particular case, this particular court-appointed receiver who took over. Instead of just saying stop what you're doing that's wrong, they said stop what you're doing that's wrong. And by the way, we want the court to order that we can take over everything. We can appoint a receiver. We can seize all the assets. And we can run your businesses for you, which they did and ran them into the ground until there was practically nothing left. That's not how this is set up. There's a very straightforward, complicated system, actually. You start with one simple step, and then it gets complicated. The simple step is identify something that's wrong. It needs to be stopped. You get a TRO. You get a preliminary injunction. You stop it. Then you're supposed to go through this – Oh, you get a preliminary injunction or an order from the court. And if the individuals who are the subject of it stop, then it stops it. You're done. If they follow the order. Right. But here the FTC presumption was you're not going to follow any orders, so we're going to go – we're going to ignore Section 19, which has this very long, complex procedure. You have to – you serve a complaint. The violator is supposed to come before an administrative law judge. That never happened. The violator has a right to appear and show cause why the FTC should not be acting the way it is, and that never happened. The hearing testimony at the administrative hearing is supposed to be reduced to writing and filed in the office of the FTC. That never happened. If after the hearing the FTC says that it's unhappy, then it states findings. Counsel, I – There's a long procedure. Excuse me. I have a question because it seems to me that I read your opening brief to be challenging the remedies that the district court chose. And I didn't read it to be challenging the underlying procedures, which is what you're discussing now. Am I reading your brief incorrectly? Somewhat. The whole point of it is that the district court had no – the FTC had no authority to act the way it did, and the district court had no authority to go along with what the FTC wanted. The FTC used Section 13 to take over the business, appoint a receiver, seize the assets, freeze the assets, and run things into the ground. That's not what Section 5, Section 13B, and Section 19, when read together in the proper manner, provides. If you're going to do these extraordinary remedies, if you're going to be seizing assets, freezing assets, seizing business records, taking over business, seeking damages and sanctions, you have to go through the Section 19, Section 5 process. You can't use Section 13 as the basis for what you were doing. But that's what the FTC did, and the district court went along with it. That was wrong. The process that was used, the statutory justification was wrong. Judge Lefkoe has a question. What is your authority for that proposition? The AMG case? And the statutes themselves. But AMG doesn't really speak to the situation here. It was discussing 13B. Right, 13B. That's what the court used. That's what the FTC used in this case. I mean, it's not as, it's not precisely on point, but the point that it is on point, well, I've got too many points here, is that Congress set up this particular structure. 13B has a very limited use. The FTC in the 1970s started saying, well, we can use Section 13 really to do what Section 13, Section 5, and Section 19 are all supposed to do together. We can just leap directly from Section 13, take over businesses, seize businesses, appoint receivers, and push these businesses into a settlement, which is what usually happens, or get damages. And that's not what Section 13 is for. Section 13 is for stopping bad stuff right now. Then you go to Section 19 and Section 5, and you go through all those administrative law judge steps, everything else. You wind up actually with an appeal to the Court of Appeals. And it's a long, detailed, very, very protected process. But the FTC didn't want to use it, doesn't want to use it, and says we don't have to use it. That's not right. And I think AMG is good authority for starting the analysis. It's not precisely on point, but it's making a key pronouncement that you're supposed to follow what the statutes actually say is not what the FTC says they say at all. FTC just wants to ignore Section 19 and Section 5 and go through Section 13, a very streamlined process. Is there a difference between a rule violation and a statutory violation? I mean, are there different remedies for, like here it looks like we have a rule violation? Well, if you have a rule violation, it works backward to the statute. Say we have violation of the rule. Therefore, we can do certain statutory things. So they work together. But you cannot get into court and go through this elaborate process that the FTC used here to take over the business, get the receiver appointed and all that stuff unless you go through all the steps that are provided by Section 5 and Section 19 and then you've already done your Section 13 thing, which is basically to freeze things and get people to stop doing bad acts. I think those are my major points. I'd be happy to talk some more about it. Do you want to reserve the rest of your time? Well, yes, just a minor, well, maybe not so minor thing. When I started talking about the judicial and executive branch environment we're living in, and I think that's one reason this case is so important. You've got to limit executive authority according to what Congress intended. And I will reserve my remaining time.  We'll hear from the Commission. May it please the Court. I'm Matthew Weprin on behalf of the Federal Trade Commission. Your Honor, I think it's important to start here by reminding you that appellants do not dispute liability. They only challenge certain aspects of the remedy. So that makes the question before the Court here today a simple one. Did the district court abuse its discretion when it granted the challenge remedies? The answer is no. In this case, the FTC sought three categories of remedy that were challenged. First, compensatory contempt sanctions for violation of the 2002 injunction. Second, a broader injunction barring all multilevel marketing activities. And third, consumer redress under Section 19 of the FTC Act for rule violations. Here, the district court did an excellent job managing this complicated case through several years of complex procedural history. And ultimately, after summary judgment and a bench trial, the district court here granted much of the relief sought by the FTC in order to stop the illegal conduct, prevent it from occurring again in the future, and also to provide redress to consumers that were harmed by this conduct and the violation of the prior 2002 order. Now, Your Honor, throughout all this, the district court never abused its discretion. It exercised its discretion and relied on very specific authorities for each category of remedy here. For the compensatory contempt sanctions, the district court relied on its inherent ability to enforce its own orders. And here, the district court followed the guidance of the e-debit pay case of this court and exercised its broad discretion to calculate consumer harm based on the net revenues, basically the money paid directly by consumers to the operators of these pyramid schemes. So, counsel, it may well not be relevant to the issues we're looking at, but where is the $7 million? Your Honor, the $7 million has not been received by the FTC. We have $60,000 in frozen assets remaining from the individual defendants, but we need to collect on the $7.3 million, and we plan to try to do so after this appeal. So it's just a judgment, right? Yes, Your Honor. Right. So what support do you have for the position that AMG does not preclude the FTC from commencing an action under 19A1 in the federal district court? Your Honor, Section 19A1 was not impacted by AMG. The AMG case was just about the powers that the FTC has under Section 13B to seek equitable monetary relief. The FTC still continues to have the powers to seek permanent injunctions and preliminary injunctions under Section 13B, and the FTC also has the authority to seek rule violation orders under Section 19A1 of the FTC Act directly in federal court. And you can look at the Simple Health case, which is a Section 19A1 case in the 11th Circuit that is after AMG. Would you say that again? What case was it? The Simple Health plan case, I believe cited in my brief, which is a post-AMG case involving Section 19. So when you filed the case, well, the district court imposed the asset freeze and receivership. Did it for the purpose of equitable monetary relief at the very beginning, and then after AMG, did it change its tune to this is for rule violation only? Yes, Your Honor. Initially, when we filed this case, Section 13B still allowed the FTC to get equitable monetary relief under the 9th Circuit precedent. However, the district court did reassess the preliminary injunction following AMG and determined that the asset freeze was justified under Section 19A1 because of the possibility of equitable remedies. At that time, the FTC had a theory for about $1 million in harm based on those violations. So are we to judge it on, I mean, the law that you followed at that time, we still have to follow AMG, right? Well, yes, Your Honor, and AMG was properly applied here by the district court in order to just apply to Section 13B equitable monetary relief. So how do you understand the relief that the appellant wants to be return of the $440,000? It appears the appellant wants that relief. However, at this point, any money that's still subject to the asset freeze would go towards the $7.3 million contempt sanction regardless. Okay. And unless you have any other questions about the contempt sanction, I can move on to the permanent injunction barring multilevel marketing. The permanent injunction barring multilevel marketing is justified under Section 13B of the FTC Act, which allows the FTC to get permanent injunctions in federal court. The district court here carefully followed this court's ruling in the GrantConnect case, which applied a three-factor test to assess the scope of an injunction, and the district court properly applied its discretion to ban all multilevel marketing in order to stop similar illegal conduct from occurring again in the future. And the third category relief was consumer redress under Section 19 of the FTC Act. In this case, the district court found $6,800 in consumer redress was required for violations of the merchandise rule, and the district court was well within its discretion to do so. Appellants also appear to challenge a few other issues that the FTC believes are not properly before this court, and that is because at this point the preliminary injunction has now merged into a permanent injunction and has rendered some of these issues moot. Specifically, for example, the appellants appear to challenge the receivership being established and the management of that receivership, but the receivership has now been terminated by the permanent injunction. And they also challenged the previous basis for the Section 19 asset freeze, which is now based on the $7.3 million contempt sanction. The FTC believes these issues are not properly before the court, but even if they were before the court, the FTC believes that the district court was well within its discretion in all these areas. Unless the court has any further questions for me, I would rest on the brief and ask that the district court's judgment be affirmed. I just, I find it, you know, statutory interpretation here is a little difficult. But if the receivership was unlawful, even though it was terminated, wouldn't there be, wouldn't the appellant have some grounds to say, I want the money back, right? Or the receivership was improper, and therefore the amount of money you spent on it was improper. Your Honor, that may be so, but here the FTC was well within its authority to ask for and the district court was well within its authority to order a receivership. I'm just saying if, you know, you're saying it's moot because it was dissolved. Yes, Your Honor, I understand your question. And there is one of the reasons why here the receivership ran out of money and one of the reasons why there is an interlocutory jurisdiction to challenge these sort of receiverships is to prevent this exact problem, which is allowing the appellants to appeal this decision earlier, which they could have done and actually did do in the post-AMG decision, but then voluntarily dismissed. So it certainly would have been before our court then? Yes. My colleagues have any other questions? Not for me. Thank you. And, Counsel, you have some time left for rebuttal. You get to the old problem. What happens when you have the government comes forward or a party comes forward and says, based upon this precedent, I win, when that precedent was wrong since the 1980s and so every circuit court went along with the FTC. I don't know why. Nobody read the statutes. And you get to AMG and they finally say, enough is enough. This is what the statute says. You have not been doing it. You're all wrong. So is a decision based on a wrong reading of the statute good? I don't see how it could be. You simply didn't understand what was right in front of you. So the 11th Circuit got it wrong too? Every circuit. No, I mean the 11th Circuit since AMG got it wrong. Well, they limited it somewhat more than it needs to be limited, but that's fine. You're not bound to follow what the 11th Circuit says. You should be looking at the statute first and then, of course, the interpretation of that statute by the highest authority in the land. That's what matters. As far as the receivership, there was a challenge to that from the beginning. They fought that like the Dickens. Was counsel correct that that was appealed and that the appeal was voluntarily dismissed? If it was, I don't remember it. I thought I was on that appeal. And I don't remember a voluntary dismissal. But if he says it happened that way, I suppose it did. Well, if that occurred, why would it be before us now if that was a lost opportunity? I don't remember a voluntary dismissal. I remember getting thrown out by the 9th Circuit. That's what I remember. So, I mean, if it happened the way he says, I'm living in a different reality. We tried to get the court to enforce AMG. Just after it came up here and says the district judge is wrong, you've got to enforce AMG, and the appeal ended with, as I remember, say you're wrong. But I don't know exactly. I'll have to, if I may supplement to the court exactly what happened. Four seconds. Well, not much to say there. Oh, rules. If I just, one minor thing. We talked earlier about rules and regulations. The FTC says you violate the merchandise rule. They violated the cooling off rule. They lost 100% on the cooling off rule. Merchandise rule, they had asked for $560,000 in damages, and they got $6,829. All of this mess, receivership and everything else, and they got $6,829. All right. Thank you. Thank you, counsel. We thank counsel for their arguments, and the case just argued is submitted.
judges: GRABER, BENNETT, Lefkow